IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BROOKE PEARCE, as next of friend of U.V., a minor, and JUSTINA GARCIA, | § § § § § § § § § § § § § § § § § § | |
| *Plaintiffs*, | | |
| v. | | Civil Action No. 4:18-cv-3196 |
| FBI AGENT DOE, *in his individual capacity*, NICHOLAS CHASE CUNNINGHAM; SOPHIA PEREZ HEATH; JIMMY TONY SANCHEZ; DELIA GUALDINA VELASQUEZ; and THE UNITED STATES, | | |
| *Defendants*. | | |

**DEFENDANT UNITED STATES' OPPOSED MOTION FOR ENTRY OF A PROTECTIVE ORDER**

Defendant United States ("Defendant"), by and through its undersigned counsel, files this opposed motion for entry of a protective order, pursuant to Federal Rule of Civil Procedure 26(c).

**I. BACKGROUND**

1. In this case, Plaintiffs have alleged a claim under the Federal Tort Claims Act (FTCA) and a *Bivens* claim relating to an FBI operation that sought to rescue a kidnapping victim and that resulted in a fatal shooting. *See* Dkt. No. 32, Plaintiffs' Third Amended Complaint. The shooting has received significant public attention. The United States files this motion for a protective order to govern the production of relevant and non-privileged documents in this case. The United States is not seeking a protective order for the purpose of withholding relevant and non-privileged information. Rather, the United States seeks this protective order in order to, among other things,

1

facilitate discovery, permit disclosure of discoverable information in accordance with the Privacy Act, protect sensitive law enforcement information, and afford enhanced protection to FBI Special Weapons and Tactics (SWAT) personnel and certain other personnel involved in the rescue operation.

2. On December 29, 2020, the Court held a telephonic scheduling conference and ordered that discovery begin as between Plaintiffs and the United States. The Court entered a scheduling order. Dkt. No. 51.

3. On December 29, 2020, Plaintiff Garcia sent the United States a discovery request containing requests for production and interrogatories.[1] The documents and information requested included personnel records of FBI Agent Doe, medical records, FBI reports pertaining to the incident made basis of this lawsuit, and internal communications (such as memos and emails) about the incident made basis of this lawsuit. *See* Ex. A, Plaintiff Garcia's 1st Amended Request for Production and 1st Amended Set of Interrogatories to the United States.

4. On January 20, 2021, the undersigned counsel sent attorneys for Plaintiff a draft protective order to govern discovery in this case. *See* Ex. B, draft protective order. The draft protective order sought to facilitate discovery while protecting against public disclosure of sensitive law enforcement material, information subject to the Privacy Act, other confidential or sensitive personal information protected under State or Federal law, and inadvertently disclosed privileged information.

5. On January 21, 2021, the undersigned and attorneys for Plaintiff had a meeting via Zoom to discuss the draft protective order and discovery issues. The parties agreed to a 30-day extension

---

[1] Plaintiff initially sent the United States a discovery request on May 18, 2020. The United States provided a written response on June 23, 2020, objecting to providing discovery at that time.

for the United States to provide a written response to Plaintiff's discovery requests.[2] The parties did not reach an agreement on the draft protective order, as attorneys for Plaintiff needed time to review it.

6. On January 24, 2021, counsel for Plaintiff notified the undersigned via email that Plaintiff was in disagreement with the protective order. *See* Ex. C, emails re: draft protective order. On January 25, 2021, after follow-up by the undersigned, counsel for Plaintiff further provided opposition to a protective order, noting Plaintiff would only agree not to "reveal/release (without redaction) of home addresses, SSN#s, DL #s, home phone numbers, names of minor children, and medical records unrelated to the events." *Id*.

7. The United States sent initial disclosures to Plaintiff on February 1, 2021. The United States noted that documents covered by the disclosures would be provided pursuant to a protective order.

8. On February 3, 2021, the undersigned contacted counsel for Plaintiff to ask Plaintiff to reconsider a protective order. Plaintiff is opposed to a protective order for this case.

9. On January 6, 2020, the Court signed a stipulated protected order (previously submitted by the parties in an agreed motion) protecting the name of FBI Agent Doe from public disclosure, as well as any other information that reveals or tends to reveal FBI Agent Doe's identity. Dkt. No. 27.

10. In filing this motion, the United States is not waiving its right to object to non-relevant or privileged documents. The United States makes this motion to allow it to produce relevant and non-privileged discovery, in accordance with applicable law, in the most efficient manner possible, while protecting confidential and sensitive information.

---

[2] On February 2, 2021, counsel for Plaintiff asserted that a response to the discovery requests were overdue. However, the undersigned reminded counsel for Plaintiff of the prior agreement to an extension. The United States is and has been proceeding in good faith based on that agreement.

## II. CERTIFICATION OF ATTEMPTS TO CONFER WITH OPPOSING COUNSEL

As required by Federal Rule of Civil Procedure 26(c) and the Court's written procedures, the undersigned attempted in good faith to resolve this matter prior to filing this motion. As set forth in paragraphs 4, 5, 6 and 8 above, the undersigned submitted a draft protective order to opposing counsel, discussed the matter, and opposing counsel opposes the entry of a protective order in this case.

## III. LAW AND ARGUMENT

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…." Fed. R. Civ. P. 26(c)(1). The moving party must demonstrate good cause, and that showing requires a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Intern, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (citation omitted).

In this case, Plaintiff has alleged a claim under Federal Tort Claims Act (FTCA) and a *Bivens* claim relating to an FBI kidnapping rescue operation. *See* Dkt. No. 32, Plaintiffs' Third Amended Complaint. As Plaintiff's discovery requests indicate, discovery will involve the production of documents and information relating to, among other things, sensitive law enforcement materials that merit protection from public disclosure under Rule 26(c). Discovery in this case will also implicate the Privacy Act of 1974, 5 U.S.C. § 552a ("Privacy Act").

The Privacy Act mandates the maintenance of confidentiality of persons' names and other personal identifiers which are contained within a "system of records" by a federal agency. *See NASA v. Nelson*, 562 U.S. 134, 131 S. Ct. 747, 178 L. Ed. 2d 667 (2011), *Smith v. Nelson*, 516 F. Supp. 2d 832, 838 (S.D. Tex. 2007). The Privacy Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by

failures on the Government's part to comply with the requirements. *See Doe v. Chao*, 540 U.S. 614, 618, 124 S. Ct. 1204, 157 L. Ed. 2d 1122 (2004).

To be a "record," the information must be both (1) about the individual and (2) linked to that individual by name or identifying particular. *Pierce v. Dep't of U.S. Air Force*, 512 F.3d 184,188 (5th Cir. 2007) (citation omitted). Additionally, the Privacy Act defines the term "record" to mean "any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph." 5 U.S.C. § 552a(a)(4).

The Privacy Act does not act as an independent restraint upon requests for disclosure of information, but rather, provides for a private cause of action whenever a governmental agency fails to comply with the requirements of the act in a way that has an adverse effect on an individual. See *Doe v. Veneman*, 380 F.3d 807, 820 (5th Cir. 2004). As it stands now, counsel for Plaintiff opposes a protective order, and instead proposes not to "reveal/release (without redaction) of home addresses, SSN#s, DL #s, home phone numbers, names of minor children, and medical records unrelated to the events." *See* Ex. C. Given that Plaintiff's discovery requests seek the production of Privacy Act-protected materials, the United States is properly seeking relief from the court in the form of the protective order requested in this motion. *See* 5 U.S.C. §§ 552a(g)(1), 552a(g)(4).

In this regard, the Privacy Act has an exception which allows for the release of protected information if "a court of competent jurisdiction" authorizes such a release. 5 U.S.C. § 552a(b)(11).

While the Privacy Act does not completely exempt protected information from discovery, a court has discretion to issue a protective order upon a showing of good cause. *See Laxalt v.*

*McClatchy*, 809 F.2d 885, 888-889 (D.C. Cir. 1987). "Where the records sought are subject to the Privacy Act, the District Court's supervisory responsibilities may in many cases be weightier than in the usual discovery context." *Laxalt*, 809 F.2d at 889. Indeed, where the actual content of the record has the potential to cause harm to the affected party, a court supervising discovery should consider this factor in determining how to exercise its traditional authority to limit disclosure - courts can limit, and in actual practice do limit, the persons having access to information, their freedom to discuss the information to which they are given access, and the uses to which the information may be put. *Id*. at 889-890 (citations omitted). Thus, these Privacy Act considerations support a showing of good cause.

As additional support for good cause, the instant case already has protective order pertaining to FBI Agent Doe, who is the focus of Plaintiffs' allegations in this case. *See* Dkt. No. 27. Plaintiffs agreed to this protective order. The protective order was issued pursuant to 5 U.S.C. § 552a(b)(11). Id. ¶ 1. Moreover, that order not only protects FBI Agent Doe's name, but "other information which tends to reveal FBI Agent Doe's identity." *Id*. The order also limits the disclosure of FBI Agent Doe's true name to Plaintiffs' counsel (as set forth more fully in the order) and the use to only prosecuting this case. *Id*. at ¶¶ 2, 4. Moreover, the order allows documents to be filed with this Court using appropriate redactions or under seal, and there are further limitations on the use of FBI Agent Doe's identity in open court. *Id*. ¶¶ 7, 8. Thus, discovery in this case will be subject to this agreed protective order.

The protective order applicable to FBI Agent Doe, at Dkt. No. 27, already would require confidentiality and limits on use for all information regarding FBI Agent Doe's identity and any other information which tends to reveal FBI Agent Doe's identity. The scope of this order includes more than just any statements given by FBI Agent Doe, but also, among other things, FBI Agent Doe's training records, and any reports discussing FBI Agent Doe. Likewise, given that this case

is primarily about the actions of FBI Agent Doe during the kidnapping rescue operation, the scope of the protective order at Dkt. No. 27 would apply to other documents, for example, reports that identify FBI Agent Doe by name, or statements given by other FBI agents participating in the kidnapping rescue operation that identify FBI Agent Doe by name.

The United States is requesting an analogous protective order to encompass all other discovery not covered by the protective order pertaining to FBI Agent Doe as defined at Dkt. No. 27, to allow the FBI, including its agents and employees, to disclose Privacy Act protected records pursuant to 5 U.S.C. § 552a(b)(11), and to relieve the FBI, its agents, and employees of any penalties to which they may otherwise be subjected pursuant to 5 U.S.C. § 552a(g).

As noted at the outset, the United States is not seeking this protective order for the purpose of withholding non-privileged, relevant information. Rather, the proposed protective order (attached hereto as Ex. B) permits FBI information and documents to be provided to plaintiffs' counsel and plaintiffs, except for the names of SWAT and certain other FBI personnel involved with the encounter at issue in this suit, which would be produced for attorneys' eyes only. In addition, the proposed protective order imposes reasonable requirements on how FBI information and documents can be used and disseminated, including requirements that FBI information and documents only be used for purposes of this litigation, and that confidential information (as defined in the protective) be redacted or concealed through pseudonyms in public court filings. Given, among other things, the Privacy Act-protected and sensitive law enforcement information that it is being sought in discovery by the plaintiffs, the United States submits that these requirements are reasonable and appropriate.

As discussed, the proposed protective also provides heightened protection for the names of SWAT, TOC (Tactical Operations Center), or OSC (On Scene Command) personnel, referred to collectively as "OPS" (Operations) who were involved with the disputed encounter. Under the

protective order, the names of OPS personnel will be produced for attorney's eyes only, and subject to a requirement that these names be publicly identified through the use of a pseudonym or with the name of the individual redacted.

"A party may generally do what it wants with material obtained through the discovery process, as long as it wants to do something legal." *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 683-684 (5th Cir. 1985) (citations omitted). However, courts have broad discretion in granting a motion for protective order. *See id.* at 684 (citations omitted). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984). "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery…," and thus has "…substantial latitude to fashion protective orders." *Id.*[3]

Therefore, this Court has the discretion to approve the draft protective order attached hereto as Ex. B upon a showing of good cause. There is authority, distinguishable from the instant case, providing that cases involving public officials, public entities, or matters of a public interest should weigh against protective orders with limits on access and use. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787-788 (3rd Cir. 1994) (for cases involving a "public entity or official" or "involves issues important to the public," such matters "should be a factor weighing against entering or maintaining an order of confidentiality."). *Pansy* has been relied upon by courts in this district. *See Carnaby v. City of Houston*, No. 4:08-cv-01366, 2008 WL 4546606 at *2 (S.D. Tex. Oct. 10, 2008), *Gutierrez v. Benavides*, 292 F.R.D. 401, 405 (S.D. Tex. 2013).[4] However,

---

[3] *Rhinehart* also noted that a protective order entered upon a showing of good cause does not offend the First Amendment if it is "limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources." *Id*. at 37.

[4] *Carnaby* was a civil case involving a shooting by Houston Police Department officer. U.S. District Judge Ellison held that "[s]ealing discovery and limiting communications would only weaken popular faith in the judiciary,

our instant case is distinguishable, involving different underlying facts and discovery requests. The present case is also distinguishable due to the agreed protective order applicable to FBI Agent Doe. To that end, we have a protective order imposing restrictions on the use and dissemination of information pertaining to FBI Agent Doe, who again, is the focus of Plaintiffs' case. Pursuant to the present motion, the United States seeks an analogous protective order that would afford similar protections to, among others, law enforcement personnel involved with the kidnapping rescue operation and to related sensitive law enforcement information.

Additionally, another distinction is that the FBI personnel covered by the draft protective order have a legitimate interest in avoiding the harassment or other harms that could result from disclosure of their involvement in this well-publicized matter. *See Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980) ("As several courts have recognized, [FBI] agents have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives"; holding that the names and identifying information of FBI agents involved in an investigation were exempt from disclosure under FOIA);[5] *see also In re Guantanamo Bay Detainee Litigation*, 787 F. Supp. 2d 5, 15-17 (D.D.C. 2011) (in habeas action challenging detentions, granting the government's request to

---

particularly in a case involving public safety and welfare." 2008 WL 4546606 at *2. *Gutierrez* was a civil case involving an FTCA claim and *Bivens* claims against federal defendants for allegations of excessive force and assaultive conduct. U.S. Magistrate Judge Hacker held that "the public's interest in 'records indicating official misconduct, abuse of power, or constitutional violations by Defendants' is particularly legitimate and important, while Defendants privacy interest in these records is diminished because of their status as public officials." 292 F.R.D. at 405 (citation omitted).

[5] *Lesar* involved a FOIA request to identify individuals involved in the FBI investigation of Dr. Martin Luther King, Jr. The court noted that in "their capacity as public officials FBI agents may not have as great a claim to privacy as that afforded ordinarily to private citizens, but the agent by virtue of his official status does not forgo altogether any privacy claim in matters related to official business." *Id*. Under the circumstances of the case, the court held that "public identification of the individuals involved in the FBI's investigation of Dr. King would constitute an unwarranted invasion of their privacy in light of the contemporary and controversial nature of the information." *Id*. The *Lesar* case involved different underlying facts than those presented here. However, our instant case involves allegations of a fatal shooting by an FBI agent and that has attracted and will likely continue to attract public scrutiny; and thus, the considerations supporting the outcome in *Lesar* also apply here.

protect the names and identifying information of law enforcement personnel, including members of FBI's Joint Terrorism Task Force, given risk to officer safety).

Pertinent to the foregoing, the FBI has concerns about the names of FBI witnesses and participants being disclosed publicly by Plaintiffs. Attached here to as Ex. D is the Declaration of Supervisory Special Agent David Walker, who serves as the Section Chief of the Tactical Section/Field Operations within the FBI's Critical Incident Response Group in Quantico, Virginia. According to Agent Walker, he has previously participated in FBI operations that involved the use of force, including deadly force. *See* Ex. D ¶ 5. In cases generating public attention where the names of FBI personnel involved with the operations were publicly disclosed, there have been instances where those individuals were subjected to threats and harassment. *Id*.

Consistent with the foregoing, other courts have entered protective orders, similar to the one that the United States requests in this case, that provide enhanced protection for the identities of SWAT and other operational personnel involved in encounters involving fatal shootings. *See Dimaggio v. United States, et al.*, No. 1:15-cv-00311, Order, Dkt. No. 63 (D. Idaho Sept. 24, 2019) (in a case involving the fatal shooting of an individual arising out of an FBI Hostage Rescue Team (HRT) operation, the court entered an agreed protective order similar to the one requested here, that authorized the disclosure of names and identifiers of FBI HRT and SWAT personnel for attorneys' eyes only and required the names of these of these individuals to be publicly identified by pseudonyms) (hereto attached as Ex. E); *see also A.R., et al., v. Acee, et al.*, No. 1:15-cv-1021, Stipulated Protective Order, Dkt. No. 40 (D.N.M. Feb. 12, 2016) (entering agreed protective order authorizing the disclosure of the names and other personal identifiers of FBI SWAT personnel for attorneys' eyes only and requiring the names of the SWAT personnel to be publicly identified by pseudonyms) (hereto attached as Ex. F).

Under the circumstances, enhanced protection for the names and identifiers of OPS personnel is warranted, and the proposed protective order should be entered by the court. Regardless of FBI Agent DOE's protective order, and any additional protective orders issued, Plaintiffs' ability to prosecute this case will not be impaired.

## IV.  CONCLUSION

WHEREFORE, the United States respectfully requests the Court issue a protective order (attached hereto as Ex. B) to address all other discovery not covered by the protective order pertaining to FBI Agent DOE as defined at Dkt. No. 27.

Respectfully Submitted,

RYAN K. PATRICK
United States Attorney

By:   *s/ Chad W. Cowan*
CHAD W. COWAN
Assistant United States Attorney
Southern District of Texas
1000 Louisiana Street, Suite 2300
Houston, Texas 77002
PH: (713) 567-9569, FX: (713) 718-3303
Alabama Bar No. ASB-5272-C54C
Texas Bar No. 24082540
Southern District No. 938890

**ATTORNEY FOR DEFENDANT UNITED STATES OF AMERICA**

## CERTIFICATE OF SERVICE

      I, Chad W. Cowan, do hereby certify that a true and correct copy of foregoing Motion and attachments were forwarded via electronic filing to Plaintiffs' attorneys (and separately by the emails of record for Plaintiffs' attorneys) on February 11, 2021.

      / s/ **Chad W. Cowan**
      CHAD W. COWAN
      Assistant United States Attorney