IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BROOKE PEARCE, as next of friend of U.V., a minor, and JUSTINA GARCIA, <br><br>*Plaintiffs*, <br><br> v. <br><br> FBI AGENT DOE, *in his individual capacity*, <br> NICHOLAS CHASE CUNNINGHAM; <br> SOPHIA PEREZ HEATH; <br> JIMMY TONY SANCHEZ; <br> DELIA GUALDINA VELASQUEZ; and <br> THE UNITED STATES, <br><br> *Defendants*. | § § § § § § § § § § § § § § § § § § § | Civil Action No. 4:18-cv-3196 |

## **DEFENDANT'S PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW**

Pursuant to the Court's Scheduling Order, this Court's Local Rules, and the Federal Rules of Civil Procedure, Defendant United States of America proposes the following findings of fact and conclusions of law.

Dated: October 7, 2024                                   Respectfully Submitted,

                                                ALAMDAR S. HAMDANI
                                                United States Attorney
                                                Southern District of Texas

                                          By: /s/ *Ariel N. Wiley*
                                                Ariel N. Wiley
                                                Assistant United States Attorney
                                                Texas Bar No. 24093366
                                                Federal ID No. 2554283
                                                1000 Louisiana, Suite 2300
                                                Houston, Texas 77002
                                                Telephone: (713) 567-9000
                                                Facsimile: (713) 718-3303
                                                Email: ariel.wiley@usdoj.gov

                                                ATTORNEY FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

       I certify that on October 7, 2024, Defendant's Proposed Findings of Fact and Conclusions of Law was filed with the Court through the Court's CM/ECF system on all parties and counsel registered with the Court CM/ECF system.

                                                                       /s/ *Ariel N. Wiley*
                                                                       Ariel N. Wiley

## **PROPOSED FINDINGS OF FACT**

### A. **Jurisdiction and Venue**

1. This Court does not have jurisdiction over Plaintiff's claims against the United States because they are barred under the discretionary function exception.

2. Venue is proper in this cause because the events giving rise to the claims occurred in the Southern District of Texas. 28 U.S.C. § 1402(b).

### B. **Identification of the Parties**

3. Plaintiff Ulysses Valladares is an individual residing in Texas.

4. Plaintiff Justina Garcia is an individual residing in Honduras.

5. Defendant United States of America is sued under the Federal Tort Claims Act because Plaintiffs allege claims arising from the actions or omissions of an employee of the Federal Bureau of Investigations. Dkt. 32.

### C. **The Incident**

6. In the evening of January 24, 2018, the Federal Bureau of Investigation (FBI) sent out an email to FBI agents requesting immediate availability for an operation to rescue a hostage in Houston, Texas. See Agent Hawkins' Statement, p. 1.

7. At the time, the hostage was believed to be held in a hotel. See Agent Hawkins' Statement, p. 1.

8. FBI agents soon met at a rally location at a local fire station where they were briefed about the kidnapping investigation, the hostage, and the tactical plan, including positions, duties, and roles of the Special Weapons and Tactics (SWAT) team. See Agent Hawkins' Statement, p. 2.

9. The FBI's Deadly Force Policy was read to the entire team which provides, "Law enforcement officers and correctional officers of the Department of Justice may use deadly force only when necessary, that is, when the officer has a reasonable belief that the subject of such force poses an imminent danger of death or serious physical injury to the officer or to another person." See Deadly Force Policy.

10. After the SWAT team left the rally location to the location of the hostage, the FBI learned that the hostage was actually being held at a house on Elbert Street in Houston. See Agent Hawkins' Statement, p. 5.

11. The SWAT Team was then briefed on a new operational plan. See Agent Hawkins' Statement, p. 5.

12. Special Agents Jeffrey Hawkins and John Doe were assigned to provide cover on the south side of the house. See Agent Hawkins' Statement, p. 5. Agent Hawkins was specifically tasked with porting, or breaking, the windows on the south side of the house and providing intel from the interior of the house. See Agent Hawkins' Deposition, 37:5-37:10; 37:22-38:2; Agent Hawkins' Statement, p. 5. To port the windows, Agent Hawkins was given a Halligan tool to break the glass. See Agent Hawkins' Statement, p. 3.

13. A separate team was to breach the house from the front. See Agent Hawkins' Statement, p. 5.

14. That evening, the agents arrived at the house where the hostage was believed to be held. See Agent Hawkins' Statement, p. 5. As Agent Hawkins was preparing to assume his role in the rescue plan, he observed two sets of windows on the south side. See Agent Hawkins' Statement, p. 5. Agent Doe and Hawkins approached the window closest to the front of the house, and once Agent Hawkins heard a command to "breach" over his radio, he began to port the window with the Halligan tool. See Agent Hawkins' Statement, p. 5.

15. As he was breaking the window, Agent Hawkins dropped the Halligan tool inside the house. See Agent Hawkins' Statement, p. 6.

16. Feeling that he was in danger as he was completely exposed to the window, Agent Hawkins immediately moved from the window and Agent Doe provided him cover. See Agent Hawkins' Deposition., 86:21-86:24; 107:6-107:17.

17. As Agent Hawkins turned away from the broken window, he heard yelling. See Agent Hawkins' Deposition., 73:18-23. He looked back at the window he just ported and saw a silhouette of a person within the house, leaning out the window. See Agent Hawkins' Deposition., 73:18-73:23. The person appeared to be in a shooting stance based on the person's position. See Agent Hawkins' Deposition, 75:12-75:20.

18. Agent Hawkins reported that he perceived this as a threat because the person's shooting stance led him to believe the person may have a weapon. See Agent Hawkins' Deposition, 86:1-86:8. Agent Hawkins then heard two gunshots. See Agent Hawkins' Deposition, 73:25-74:3. At the time, he did not know where the gunfire was coming from. See Agent Hawkins' Deposition, 74:1-74:3. Because the individual in the house was in a shooting stance, he believed the gunshot came from within the house. See Agent Hawkins' Deposition, 75:12-75:20.

19. After the shots were fired, Agent Doe made a statement to the effect that "I shot" and that "he grabbed my gun," referring to the individual inside the house. See Agent Hawkins' Deposition, 82:13-82:17; See Agent Hawkins' Statement, p. 6.

20. Agent Hawkins later testified that agents have the discretion to use lethal force if someone grabs an agent's gun. See Agent Hawkins' Deposition, 125:1-125:3; 125:16-125:21; See Agent Hawkins' Statement, p. 6.

21. Immediately after the shooting, medical assistance was called and it was determined that the person who was shot was the hostage, Ulises Valladares.

### D. The Alleged Damages

22. Plaintiff Ulysses Valladares, through counsel, failed to appear and provide any testimony about his alleged damages.

23. Plaintiffs do not have any timely disclosed expert regarding Ulysses Valladares' alleged damages.

24. Plaintiffs' expert regarding Plaintiff Justina Garcia's alleged damages failed to appear and provide testimony about Garcia's alleged damages.

25. Ulises Valladares provided Justina Garcia with approximately $100 a month, and sometimes less, but Garcia does not have any evidence of this. Garcia did not expect Ulises Valladares to support her. See Justina Garcia's Deposition, 31:13 – 33:22.

26. Ulysses Valladares does not have any evidence of financing medical care after he turned 18.

27. Justina Garcia did not pay funeral costs. See Justina Garcia's Deposition, 37:15-21.

28. Justina Garcia does not know whether she has or will spend any money on medical care. See Justina Garcia's Deposition, 54:12-16.

29. Justina Garcia can still pay all her bills and cost since Ulises Valladares' death. See Justina Garcia's Deposition, 54:17-20.

### E. Other Damages

30. Plaintiffs also claims damages for future medical expenses, past and future physical pain and suffering, past and future mental anguish, loss of earning capacity, physical impairment, loss of parent-child relationship, and loss of the society. Plaintiffs failed to present any evidence to support these damages.

### F. The Administrative Claim

31. Plaintiff Ulysses Valladares sought $5,000,000.00 in personal injury damages, and $20,000,000.00 in wrongful death from the United States on her SF-95 form filed at the administrative level.

32. Plaintiff Justina Garcia sought $25,000,000.00 in personal injury damages, and $25,000,000.00 in wrongful death from the United States on her SF-95 form filed at the administrative level.

## **PROPOSED CONCLUSIONS OF LAW**

    **A.**    **Jurisdiction and Venue**

    1.    This Court does not have jurisdiction over Plaintiff's claims against the United States because they are barred under the discretionary function exception. *Freeman v. United States*, 556 F.3d 326, 335 (5th Cir. 2009).

    2.    Venue is proper in this cause because the events giving rise to the claims occurred in the Southern District of Texas. 28 U.S.C. § 1402(b).

    **B.**    **The Federal Tort Claims Act**

    3.    This case is governed by the Federal Tort Claims Act (FTCA) and Texas substantive law. *See* 28 U.S.C. § 1346(b) (making the United States liable under the FTCA "in accordance with the law of the place where the act or omission occurred").

    4.    The FTCA provides a limited waiver of sovereign immunity, authorizing plaintiffs to bring civil lawsuits exclusively in federal court if the claim is (1) against the United States; (2) for money damages; (3) for injury to or loss of property, or personal injury or death; (4) caused by a federal employee's negligent or wrongful act or omission; (5) while acting within the scope of his or her office or employment; and (6) under circumstances where the United States, if a private person, would be liable to the plaintiff in accordance with the law of the place where the act or omission occurred. 8 U.S.C. § 1346(b). It is undisputed that Plaintiffs' claims fall under the FTCA.

    5.    Through an FTCA action, a plaintiff may recover against the United States "in the same manner and to the same extent as a private individual under like circumstances under substantive law." 28 U.S.C. § 2674. But the FTCA provides exceptions to its general waiver of sovereign immunity. One such exception is found in 28 U.S.C. § 2680(a), which preserves sovereign immunity for certain discretionary acts.

    6.    Where the FTCA applies, the United States may be liable for certain torts "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

    7.    Plaintiff is bound by the amount of damages asserted in the SF-95 form filed with the Department of Homeland Security. 28 U.S.C. § 2675(b); *Dickerson ex rel. Dickerson v. United States*, 280 F.3d 470, 475 (5th Cir. 2002).

    8.    As a matter of law, Plaintiffs may not recover any damages that exceed the amount initially requested when they submitted claims to the agency to satisfy the FTCA's exhaustion required. 28 U.S.C. 2675(b); *Dickerson ex rel. Dickerson v. United States*, 280 F.3d 470, 475 (5th Cir. 2002). Plaintiff property damages are capped at $50,000, and his personal injury damages are capped at $2,000,000.

### C. Discretionary Function

9. Sovereign immunity is not waived under the FTCA over any claim "based upon the exercise of performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

10. The discretionary function exception is a "form of retained sovereign immunity." *Freeman v. United States*, 556 F.3d 326, 335 (5th Cir. 2009).

11. "[T]he purpose of the exception is to 'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984)).

12. The exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. Varig Airlines*, 467 U.S. 797, 808 (1984).

13. "[T]he question of whether the government was negligent is irrelevant" to the application of the discretionary function exception. *Gonzalez v. United States*, 851 F.3d 538, 544 (5th Cir. 2017) (citation and internal quotations omitted).

14. In applying the discretionary function exception to a case, the U.S. Supreme Court established a two-prong test. *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). First, the acts that are discretionary in nature must "involve an element of judgment or choice." *Id.* Second, the "judgment is of the kind that the discretionary function exception was designed to shield." *Id.*

15. Under the first prong of the discretionary function test, the conduct must be a "matter of choice for the acting employee." *Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954.

16. Conduct is discretionary unless a "federal statute, regulation of policy specifically prescribes a court of action from an employee to follow because the employee has no rightful option but to adhere to the directive.'" *Id.* "In other words, officers are unprotected only when they use their discretion to act in violation of a statute or policy that specifically directs them to act otherwise." *Tsolmon v. United States*, 841 F.3d 378, 384 (5th Cir. 2016). And the plaintiffs "bear[] the burden of pointing to relevant authority to show the conduct was not a choice." *Nichols v. United States*, 2022 WL 989467, at*2 (5th Cir. 2022).

17. Under the second prong of the discretionary function test, the judgment at issue must be of the kind that the discretionary function exception was designed to shield. *Gaubert*, 499 U.S. at 322. "

18. The proper inquiry under prong two is not whether [the employee] in fact engaged in a policy analysis when reaching his decision but instead whether his decision was "susceptible to policy analysis." *Spotts v. United States*, 613 F.3d 559, 572 (5th Cir. 2010).

19. "In general, because it is the mandatory duty of law enforcement agents to enforce the law, decisions as to how to best fulfill that duty are protected by discretionary function." *McElroy v. United States*, 861 F. Supp. 585, 591 (W.D. Tex. 1994)

### D. Plaintiffs' Barred Claims

20. The actions and omissions that Plaintiffs complain of are the type that have been held to be barred by the discretionary function exception. Disciplining and retaining officers encompasses supervisory judgments of the type that the discretionary function exception was meant to guard. *See e.g., M.D.C.G. v. United States*, 956 F.3d 762, 772 (5th Cir. 2020) ("We agree with other circuits that have held that federal employees' supervision of subordinates involves the kind of judgment that the discretionary function exception was meant to protect."); *Snyder v. U.S.*, 990 F. Supp. 2d 818 (S.D. Ohio 2014) ("FBI's decisions regarding investigation, choosing of its agents, and training and supervising them were discretionary in nature[.]"); *Kelly v. United States*, 924 F.2d 355, 362 (1st Cir.1991) ("'Since decisions to investigate, or not, are at the core of law enforcement activity,' said conduct is the type of 'policy-rooted decision making that section 2680(a) was designed to safeguard.'"); *Lively v. United States*, 870 F.2d 296, 297-98 (5th Cir. 1989) ("[T]here is no requirement that the decisions made by law enforcement officers during the investigation or prosecution of a case must be correct to fall within the discretionary function exception.").

21. Planning and executing a hostage rescue operation, including the use of specific equipment, also implicates decisions susceptible to policy analysis. *Gonzalez v. U.S.*, 814 F.3d 1022 (9th Cir. 2016) ("FBI's judgment about how to respond to reported threat and how extensively to disclose information to other law enforcement organizations implicated many risks, all of which required weighing in accordance with FBI's social and public policy judgments."); *Andrade v. United States*, 116 F. Supp. 2d 778, 788 (W.D. Tex. 2000), *aff'd sub nom. Andrade v. Chojnacki*, 338 F.3d 448 (5th Cir. 2003) ("The decisions as to the type of equipment to be utilized fall within the exception because they are "susceptible to policy analysis."); *see also Gonzalez*, 814 F.3d at 1037 (noting that while the court may wonder what could have been done differently by law enforcement to prevent the tragic deaths in that case, the court is "not charged with passing upon the wisdom of the government's exercise of discretion.").

### E. Negligence

22. To sustain a negligence action under Texas law, Plaintiffs must produce evidence of (1) a legal duty owed by the Defendant to the Plaintiffs; (2) a breach of that duty, and (3) damages proximately caused by that breach. *See Pool v. J.B. Hunt Transp., Inc.*, 2019 WL 2583821, at *1 (S.D. Tex. Jan. 30, 2019) (listing elements).

23. The "causal nexus" for proximate cause "consists of two elements, cause-in-fact and foreseeability." *West Start Transportation, Inc. v. Robison*, 457 S.W.3d at 185 (Tex. App—Amarillo 2015).

24. Expert medical evidence is required to prove causation unless competent evidence supports a finding that the conditions in question, the causal relationship between the conditions and the accident, and the necessity of the particular medical treatments for the conditions are within the common knowledge and experience of laypersons. *Guevara v. Ferrer*, 247 S.W.3d 662, 663 (Tex. 2007).

25. Even if Plaintiffs claims were not barred, Plaintiffs have failed to show by a preponderance of the evidence that the United States breached a duty.

### F. Damages

26. Under the FTCA, any recovery is limited to compensatory damages. *See* 28 U.S.C. § 2674; *Wheat v. United States*, 860 F.2d 1256, 1263 (5th Cir. 1988). Under Texas law, "compensatory damages" means economic and noneconomic damages. Tex. Civ. Prac. & Rem. Code § 41.001(8).

27. As a matter of law, Plaintiff is not entitled to prejudgment awards. The FTCA precludes prejudgment interest awards. 28 U.S.C. § 2674.

28. As a matter of law, Plaintiff is not entitled to punitive damages. The FTCA precludes punitive damages. 28 U.S.C. § 2674.

29. As a matter of law, Plaintiff is not entitled to post judgment interest. The FTCA limits post judgment interest only under the circumstances listed in 31 U.S.C. § 1304 and 28 U.S.C. § 1961, which are inapplicable here.

30. Under Texas law, plaintiff bears the burden of proving the actual amount, necessity, and reasonableness of their past medical expenses. *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 886 (5th Cir. 2004); *Monsanto Co. v. Johnson*, 675 S.W.2d 305, 312 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e). A claim for past medical expenses must be supported by evidence that such expenses were reasonable and necessary. *Hamburger v. State Farm Mut. Auto Ins. Co.*, 361 F.3d 875, 886 (5th Cir. 2004) (citation omitted).

31. Plaintiffs are not entitled to future medical expenses. To sustain an award of future medical expenses, Plaintiff "must present evidence to establish that in all reasonable probability, future medical care will be required and the reasonable cost of that care[.]" Gunn v. McCoy, 554 S.W.3d 645, 671 (Tex. 2018). Plaintiffs did not produce or testify to any such evidence.

32. The general rule in Texas is that "a cause of action to recover medical expenses incurred by a minor child through the date the child attains majority and for the loss of services and earnings of an unemancipated minor belongs to the child's parents." The reason behind this policy is that the parent is responsible for medical expenses incurred before the child reaches the age of majority. However, after the age of majority, the child bears legal responsibility for medical expenses. The parent cannot recover for medical expenses incurred after the age of majority, while the child cannot recover for medical expenses incurred before. *Hernandez v. Morales,* No. 7:13-CV-234, 2014 WL 794201, at *3 (S.D. Tex. Feb. 25, 2014).

33. Plaintiffs failed to prove loss of earning capacity damages. To prove lost earning capacity, Plaintiff must show their capacity to earn in the future even if he or she had not worked in that capacity in the past. *Henry v. Fiesta Mart, LLC*, No. CV H-20-4011, 2021 WL 4427244, at *4 (S.D. Tex. Sept. 27, 2021). Plaintiffs did not produce any evidence of earning capacity.

34. Under the FTCA, attorneys' fees are statutorily limited, and attorneys cannot "charge, demand, receive, or collect for services rendered" more than 25 perfect of a judgment or a settlement of suit in litigation. 28 U.S.C. § 2678.

35. Plaintiffs failed to show entitlement to physical impairment damages. To obtain damages for physical impairment, "the effect of any physical impairment must be substantial and extend beyond any pain, suffering, mental anguish, lost wages or diminished earning capacity and that a claimant should not be compensated more than once for the same elements of loss or injury." *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 772 (Tex. 2003).

36. Plaintiffs are not entitled to mental anguish damages. "Mental anguish requires more than mere worry, anxiety, vexation, embarrassment, or anger. Instead, a plaintiff must show a high degree of mental pain and distress." *Serv. Corp. Int'l v. Aragon*, 268 S.W.3d 112, 119 (Tex. App.—Eastland 2008, pet. denied) (citing *Latham v. Castillo*, 972 S.W.2d 66, 70 (Tex.1998)). Plaintiffs' expert and Plaintiff Valladares failed to testify, therefore, there is no evidence of mental anguish.

37. Plaintiffs are not entitled to any recovery, and therefore, this Court shall issue a Take Nothing Judgment in Defendant's favor.