## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **BROOKE PEARCE, as next of friend** | )( | |
| **of U.V., a minor, and JUSTINA** | )( | |
| **GARCIA,** | )( | **CIVIL CASE NO. 4:18-cv-3196** |
| *PLAINTIFFS,* | )( | |
| | )( | |
| **V.** | )( | |
| | )( | |
| **FBI AGENT DOE, in his individual** | )( | |
| **capacity, NICHOLAS CHASE** | )( | |
| **CUNNINGHAM; SOPHIA PEREZ** | )( | |
| **HEATH; JIMMY TONY SANCHEZ;** | )( | |
| **DELIA GUALDINA VELASQUEZ;** | )( | |
| **CITY OF HOUSTON and THE** | )( | |
| **UNITED STATES,** | )( | |
| *DEFENDANTS,* | )( | |

## PLAINTIFFS' TRIAL MEMORANDUM OF LAW

**TO THE HONORABLE JUDGE KENNETH HOYT:**

Plaintiffs file this Memorandum of Law as Plaintiff's Exhibit "A" to the Joint Pretrial

Order pursuant to Rule 16(e) of the Federal Rules of Civil Procedure and LR-16.2, Local

Rules of the for the United States District Court for the Southern District of Texas, Houston

Division.  In support of said memorandum, respectfully shows the Court as follows:

## TABLE OF AUTHORITIES

| Cases | Pages |
|---|---|
| *Berkovitz v. United States*, 486 U.S. 531 (1988) | 7,8 |
| *Campos v. United States,* 888 F.3d 724 (5th Cir. 2018), cert. denied, 139 S. Ct. 1317 (2019) | 4 |
| *Dickerson ex rel. Dickerson v. United States*, 280 F.3d 470 (5th Cir. 2002) | 5 |

*Hall v. Sonic Drive-In of Angleton, Inc.,* 177 S. W.3d 636  (Tex. App.—Houston [1st Dist.] 2005, no pet.).......................................................................................... 4,5

*Millbrook v. United States,* 133 S.Ct. 1441 (2013).............................................. 3

*Morgan v. City of Alvin,* 175 S.W.3d 408 (Tex. App.—Houston [1st Dist.] 2004, no pet.).......................................................................................................................... 4

*Nguyen v. United States,* 556 F.3d 1244, 1255–56 (11th Cir. 2009)................................. 3

*O'Toole v. United States,* 295 F.3d 1029, 1037 (9th Cir. 2002)........................................... 2

*United States v. Gaubert,* 499 U.S. 315, 328-332 (1991)..................................... 7

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797 (1984)...................................................................................................... 6

*Whisnant v. United States*, 400 F.3d 1177 (9th Cir. 2005)................................. 6

# I. STATEMENT OF THE CASE

January 18, 2018, Ulises Valladares was killed due to the negligence of Federal Bureau of Investigation Agent Doe who located him based on information provided by  Defendants Cunningham, Sanchez, and Velasquez that he was at the home of Defendant Heath in a bedroom. He was blindfolded and his wrist ducted taped behind his back as he was tied to a chair.

This Court has already denied Defendant's motion to dismiss.

***FTCA Claims***

This case is governed by the Federal Tort Claims Act (FTCA). Federal Tort Claims Act Congress enacted the Federal Tort Claim Act, 28 U.S.C. § 1346, a waiver of sovereign immunity, to provide remedies to individuals harmed by government negligence and is to be construed liberally, and its <u>exceptions should be read narrowly</u>. *O'Toole v. United States,* 295 F.3d 1029, 1037 (9th Cir. 2002). The FTCA provides a limited waiver of sovereign immunity,

authorizing plaintiffs to bring civil lawsuits exclusively in federal court if the claim is (1) against the United States; (2) for money damages; (3) for injury to or loss of property, or personal injury or death; (4) caused by a federal employee's negligent or wrongful act or omission; (5) while acting within the scope of his or her office or employment; and (6) under circumstances where the United States, if a private person, would be liable to the plaintiff in accordance with the law of the place where the act or omission occurred. 8 U.S.C. § 1346(b).

However, the intentional acts or omissions of an "investigative or law enforcement officer" (such as Agent Doe and other FBI agents) including but not limited to assault, battery, false arrest, false imprisonment, abuse of process and malicious prosecution, *are covered by the FTCA and may proceed.* 28 U.S.C. § 2680(h); *Millbrook v. United States,* 133 S.Ct. 1441 (2013) (involving FTCA claims against Bureau of Prisons employees) [PLN, June 2013, p.28].

While the FTCA has an exception for intentional torts there is an exception for law enforcement such as the FBI also known as the "law enforcement proviso" (*Millbrook v. United States,* 569 U.S. 50, 52 (2013)) that renders the United States liable for certain intentional tort claims committed by "investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h). Congress added this proviso "in 1974 in response to widespread publicity over abuse of powers by federal law enforcement officers."  Gregory C. Sisk, Twilight for the Strict Construction of Waivers of Federal Sovereign Immunity, 92 N.C. L. REV. 1245, 1305 (2014). *See also Nguyen v. United States,* 556 F.3d 1244, 1255–56 (11th Cir. 2009) (discussing the law enforcement proviso's purpose and legislative history); Only the following torts fall within the law enforcement proviso's ambit:  assault;  battery;  false

imprisonment;  false arrest;  abuse of process; and  malicious prosecution. 28 U.S.C. §
2680(h). To determine whether the proviso applies in any given case, the court must assess
whether the alleged tortfeasor qualifies as an "investigative or law enforcement officer[]." Id.
The FTCA defines that term to include "any officer of the United States who is empowered
by law to" (1) "execute searches," (2) "seize evidence," or (3) "make arrests for violations of
Federal law." Id. Clearly the FBI is law enforcement. See also discussion in *Campos v. United
States,* 888 F.3d 724, 737 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 1317 (2019).

The FTCA's requirement of course and scope is quite broad. The underlying tort
need not arise while the officer is even executing searches, seizing evidence, or making
arrests; so long as the officer is "act[ing] within the scope of his or her employment" at the
time the tort arises, "the waiver of sovereign immunity holds." *Millbrook,* 569 U.S. at 57. To
illustrate the wide breadth to course and scope the Supreme Court has held that the
intentional tort exception will not necessarily bar a federal prisoner's claim "that correctional
officers sexually assaulted . . . him while he was in their custody." *Id.* at 51–57.

FBI Agent Die assaulted Ulises causing his death. The elements of assault are the
same in Texas civil and criminal suits. *Hall v. Sonic Drive-In of Angleton, Inc.,* 177 S. W.3d 636,
649 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Morgan v. City of Alvin,* 175 S.W.3d 408,
418 (Tex. App.—Houston [1st Dist.] 2004, no pet.).  A person commits an assault if the
person

(1)      intentionally, knowingly or recklessly causes bodily injury to another, including
the person's spouse;

4

(2)      intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or

(3)      intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.  Tex. Penal Code Ann. § 22.01(a) (Vernon Supp. 2010).

The common law tort of assault exists to redress personal injury caused by offensive physical contact or the threat of imminent bodily injury. See *Hall v. Sonic Drive-In of Angleton, Inc.,* 177 S.W.3d 636, 650 (Tex.App.-Houston [1st Dist.] 2005, pet. denied).

Where the FTCA applies, the United States may be liable for certain torts "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. 28 U.S.C. § 2675(b); *Dickerson ex rel. Dickerson v. United States*, 280 F.3d 470, 475 (5th Cir. 2002).

Plaintiffs also brought this FTCA claim pursuant to the tort of a wrongful death action pursuant to the Texas Civil Practice and Remedies Code § 71.004 (c). Pursuant to Texas Civil Practice and Remedies Code § 71.002, and Texas statutory and common law, the Defendants are liable for their actions and omissions individually and jointly for actions, and omissions. Under CIVIL PRACTICE AND REMEDIES CODE; TITLE 4. LIABILITY IN TORT; CHAPTER 71. WRONGFUL DEATH; SUBCHAPTER A. WRONGFUL DEATH

…

Sec. 71.002.  CAUSE OF ACTION.  (a)  An action for actual damages arising from an injury that causes an individual's death may be brought if liability exists under this section.

(b)   A person is liable for damages arising from an injury that causes an individual's death if the injury was caused by the person's or his agent's or servant's wrongful act, neglect, carelessness, unskillfulness, or default.

## DISCRETIONARY FUNCTION

The discretionary function only applies to policy decisions, not at play here as Agent Doe was not making a policy decision when he shot and killed Ulises. Furthermore, the FTCA has specifically carved the intentional law enforcement torts of assault and battery. 28 U.S.C. § 2680(h). Discretionary function immunity is an affirmative defense, with the burden of proof upon the Government to show that it was exercising a discretionary function when it acted or failed to act. (*Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005)). Plaintiffs have pled that an individual Agent Doe was negligent, grossly negligent, and intentional in firing his gun at a bound, blind folded kidnapping victim Ulises.

The purpose of the discretionary function immunity is to avoid placing courts in the position of second-guessing the Government's social, economic and political decisions; it is not to protect the Government from liability for violating its own safety mandates. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797 (1984) . Turning to the purpose of the discretionary function exception, *Varig Airlines* cautioned that this exception was designed to prevent courts from second-guessing policymakers. First, it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case. . . . Thus, the basic inquiry concerning the application of the discretionary function exception is whether the challenged acts of a Government employee – whatever his or her rank – are of the nature and quality

that Congress intended to shield from tort liability. And obviously that is not the case here. Second, whatever else the discretionary function exception may include, it plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals. . . . This emphasis upon protection for regulatory activities suggests an underlying basis for the inclusion of an exception for discretionary functions in the Act: Congress wished to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. *Varig Airlines,* 467 U.S. at 813-814. "Judicial intervention in such decisionmaking through private tort suits would require the courts to second-guess the political, social, and economic judgments of an agency exercising its regulatory function." (*Varig Airlines,* 467 U.S. at 819-820, 104 S.Ct. at 2767-2768; see also *United States v. Gaubert*, 499 U.S. 315, 328-332 (1991). Not all Government decisions, let alone those of a single FBI agent in a few seconds, however, are "political, social or economic" judgments. *Berkovitz v. United States*, 486 U.S. 531 (1988). The discretionary function exception did not bar liability against the National Institutes of Health as to certain decisions. "The discretionary function exception applies only to conduct that involves the permissible exercise of policy judgment." *Berkovitz,* 486 U.S. at 539, 108 S.Ct. at 1960.) Second, even if the Government's conduct involved some element of choice, the discretionary function exception applies only if it was the type of decision that Congress wanted to protect. Here the FTCA specifically allows recovery for FBI agents shooting victims. As *Berkovitz* explained, citing *Varig Airlines*, the basis for the exception is to prevent judicial second-guessing of social, economic or political decisions. "The exception, properly

construed, therefore protects only governmental actions and decisions based on consideration of public policy." (*Berkovitz*, 486 U.S. at 537, 108 S.Ct. at 1959.)

Furthermore, when the Government has acted contrary to mandate or directive, imposing liability does not require a court to second-guess legislative and administrative decisions grounded in social, economic or political policy. "When a suit charges an agency with failing to act in accord with a specific mandatory directive, the discretionary function exception does not apply." (*Berkovitz*, 486 U.S. at 544, 108 S.Ct.). Clearly, shooting a blind folded, bound kidnapping victim was not within any policy.

A review of circuit precedent reveals two trends in the law that bear particularly on *Whisnant's* case. First, a dominant theme in our case law is the need to distinguish between design and implementation: we have generally held that the design of a course of governmental action is shielded by the discretionary function exception, whereas the implementation of that course of action is not. Second, and relatedly, matters of scientific and professional judgment, particularly judgments concerning safety, are rarely considered to be susceptible to social, economic, or political policy. (*Whisnant*, 400 F.3d at 1181, third emphasis added.) Even if there was choice, disregard of safety directives is not the type of decision that Congress wants to protect. The United States, through FBI Agent Doe, was negligent and grossly negligent, perhaps intentional, when he shot and killed Mr. Valadares when Mr. Valadares was behind a curtain blindfolded and his hands were bound.

FBI Agent Doe owed a duty to handle his firearms in a responsible manner. FBI Agent Doe owed a duty to be sure who he was shooting at. FBI Agent Doe owed a duty to be sure the person he was shooting at was a threat before shooting. FBI Agent Doe

breached each of these duties. FBI Agent Doe breached these duties and such breaches were a direct and proximate cause of the suffering and death of Ulises Valladares and Plaintiffs. FBI Agent Doe did not exercise the standard of care of a reasonable person nor a reasonable FBI Agent. At the time of the shooting FBI Agent Doe was an agent and employee of the United States working with the scope of his employment. Liability also attaches from FBI Agent Doe under respondeat superior. FBI failed to follow the required course of action. It is not FBI protocol to not shoot any person, much less a kidnapping victim, without provocation or justification.

Respectfully submitted,

*/s/ U. A. Lewis*
U. A. Lewis
The Lewis Law Group
State Bar No. 24076511
Federal Bar No. 1645666
P. O. Box 27353
Houston, TX 77227
Telephone:(713)570-6555
Facsimile:(713) 581-1017
Email: myattorneyatlaw@gmail.com

*/s/ Randall L. Kallinen*
Randall L. Kallinen
Kallinen Law PLLC
State Bar of Texas No. 00790995
U.S. Southern District of Bar No.: 19417
511 Broadway Street
Houston, Texas 77012
Telephone:713/320-3785
FAX:713/893-6737
Email: attorneykallinen@aol.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and the foregoing document has been sent to all known counsel by e-service/ECF, first class mail, electronic mail, telecopy, hand delivery, and/or certified mail, return receipt requested on all parties of record who have made an appearance in this case on the date of this filing October 10, 2024.

*/s/ U.A. Lewis*
*U.A. Lewis*