IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BROOKE PEARCE, as next friend of U.V., a minor, and JUSTINA GARCIA, <br> *Plaintiff,* <br><br> VS. <br><br> FBI AGENT, in his individual capacity,, NICHOLAS CHASE CUNNINGHAM; SOPHIA PEREZ HEATH; JIMMY TONY SANCHEZ; DELIA DUALDINA VELASQUEZ <br> *Defendants.* | § § § § § § § § § § § § § § | Case. No. 4:18-cv-3196 |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case stems from the shooting of a hostage victim in Houston, Texas on January 29, 2018. The Court incorporates the Joint Stipulated Facts submitted by the parties, and makes these additional findings.

The shooter, Agent Doe, opened fired his rifle into a window of a room where it was known the hostage was being held restrained with duct tape and blindfolded without a threat of harm, the bullet struck the left arm of Ulises Valladres and entered the left side of this torso, piercing his lung and vertebrate killing Ulises Valladares. Multiple agents were on the scene but no agent witnessed the struggle for the rifle described by Agent Doe making him believe that he was going to be lifted off the ground and through the window

Plaintiffs are the child and mother of the victim, Ulises Valladares. They seek recovery against Defendant United States ("the Government") under the Federal Tort Claims Act

("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680. From October 15, 2024, to October 16, 2024, the Court held a bench trial to resolve disputed issues of fact as to the Government's liability for the shooting, to Plaintiffs' damages, and whether the court had jurisdiction over the case. After the trial, the Court concluded that the Government failed to exercise reasonable care in its undertaking to rescue Ulises Valladres and that the Government was 100% responsible for the Plaintiffs' injuries. The United States had a duty to exercise care, but breached that duty when Agent Doe shot into the window of the room where the hostage was located, Ulises Valladares, U.V., and Justina Garcia were injured as a result of the United States's negligence causing s Valladares, U.V., and Justina Garcia to suffer damages.

Having considered the evidence and applicable law, the Court now issues its findings of fact and conclusions of law as to the Plaintiffs' damages.

## CONCLUSIONS OF LAW

### *Federal Tort Claim Act*

Congress enacted the Federal Tort Claim Act, 28 U.S.C. § 1346, a waiver of sovereign immunity, to provide remedies to individuals harmed by government negligence and is to be construed liberally, and its exceptions should be read narrowly. O'Toole v. United States 295 F.3d 1029, 1037 (9th Cir. 2002). Section 1346(b)(1) authorizes civil actions against the Government for damages for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

This is a negligence action against the United States brought pursuant to the FTCA. The United States had a duty to Ulises Valladares to use reasonable care in protecting him from the kidnappers who were holding him hostage. Agent Doe had no discretion on whether to use force against a person who posed no threat of harm to him. The United States's agent breached that duty resulting in the "accidental killing" of Ulises Valladares. The shooting was not discretionary and was not influenced by public policy considerations, and instead, Agent Doe's negligence was no more than overt carelessness, and breaches of federal statutes and the Constitution. Agent Doe's conduct was not discretionary because it was mandated by POLICY STATEMENT USE OF DEADLY FORCE approved by the Attorney General July 1, 2004 GENERAL PRINCIPLES. Law enforcement officers and correctional officers of the Department of Justice may use deadly force only when necessary, that is, when the officer has a reasonable belief that the subject of such force poses an imminent danger of death or serious physical injury to the officer or to another person. Deadly force may not be used solely to prevent the escape of a fleeing suspect. Firearms may not be fired solely to disable moving vehicles. If feasible and if to do so would not increase the danger to the officer or others, a verbal warning to submit to the authority of the officer shall be to the use of deadly force., (3) was the result of carelessness, and (4) was a violation of the Constitution. (Id. at 10-25). Plaintiff attempts to distinguish Mesa arguing the Court's conclusion was limited to "narrow questions" and not the more general proposition on which the United States relies. (Id. at 9). The United States failed to carry its burden to establish the discretionary function exception. Plaintiff's claims of negligence relating to the

actions of the federal officers with respect to blindly shooting into a window with reckless disregard.

*Intentional Actions*

The Defendant intentionally fired his weapon; it was not fired due to his weapon malfunctioning but acted negligently in doing so by shooting rounds into a room where he should have known that the hostage was located since it had been previously identified as the location.

### *Jurisdiction and Discretionary Function Exceptions*

The FTCA, 28 U.S.C. § 1346(b), provides that federal courts have jurisdiction over claims for damages against the United States for personal injury or death caused by the "negligent . . . act or omission of any employee of the Government while acting within the scope of his . . . employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." This Court has jurisdiction over Plaintiff's claims against the United States because they are not barred under the discretionary function exception since it does not apply. Venue is also proper in this cause because the events giving rise to the claims occurred in the Southern District of Texas. 28 U.S.C. § 1402(b).

Discretionary function immunity is an affirmative defense, with the burden of proof upon the Government to show that it was exercising a discretionary function when it acted or failed to act. (Whisnant v. United States 400 F.3d 1177, 1181 (9th Cir. 2005)).

*Damages*

In personal injury and wrongful death cases, there are two broad categories of compensatory damages—economic and noneconomic damages. *Golden Eagle Archery, Inc. v. Jackson,* 116 S.W.3d 757, 763 (Tex. 2003).

*Economic Damages*

In Texas, economic damages consist of "compensatory damages intended to compensate a claimant for actual economic or pecuniary loss; the term does not include exemplary damages or noneconomic damages." TEX. CIV. PRAC. & REM. CODE § 41.001(4). Such damages at issue here are past and future medical expenses, past and future loss of earning capacity, and pecuniary losses for wrongful death including loss of services and support.

The Plaintiffs provided the Court with evidence as to the Plaintiffs' economic losses. The government offered no experts concerning such losses.

*Pecuniary Loss*

The fact finder may apply their own knowledge and expertise to estimate the value of the services provided by the decedent without additional proof of their value. *Badall*, 454 S.W.3d at 638 (citing *Excel Corp. v. McDonald*, 223 S.W.3d 506, 510 (Tex. App.— Amarillo 2006, pet. denied)). Spouses, parents, and children of the deceased may recover pecuniary loss for wrongful death. See *id.* (loss of parent's services); *Dougherty v. Gifford*, 826 S.W.2d 668, 681 (Tex. App.—Texarkana 1992, no writ) (loss of spouse's services); *Fibreboard Corp. v. Pool,* 813 S.W.2d 658, 683 (Tex. App.—Texarkana 1991, writ denied) (loss of child's services). Importantly, pecuniary losses are treated "as distinct from intangible or emotional damages

recoverable in a loss of consortium claim." *Ellis v. United States,* 673 F.3d 367, 379 (5th Cir. 2012) (applying Texas law). Pecuniary losses in the wrongful-death context are defined as the loss of the earning capacity of the decedent as well as the value of advice, counsel, services, care, maintenance, and support provided by the deceased. *Badall v. Durgapersad*, 454 S.W.3d 626, 637 (Tex. App.— Houston [1st Dist.] 2014, pet. denied); Texas Pattern Jury Charges—General Negligence, Intentional Personal Torts & Workers' Compensation (2020), PJC 29.3 to 29.6. Pecuniary loss may also include certain expenses incurred by the claimant, such as funeral expenses. *Landers v. B.F. Goodrich Co.*, 369 S.W.2d 33, 34–35 (Tex. 1963). Though valuing pecuniary loss is an economic assessment, "measuring a beneficiary's pecuniary loss is inherently speculative and imprecise and is therefore best left to the [fact finder's] common sense and sound discretion." *Samco Props., Inc. v. Cheatham*, 977 S.W.2d 469, 480 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

### *Loss of Inheritance*

A plaintiff may recover damages for loss of inheritance in a wrongful death action. *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 254 (Tex. 2008). In Texas, loss of inheritance is defined as "the present value that the deceased, in reasonable probability, would have added to the estate and left at natural death to the statutory wrongful death beneficiaries but for the wrongful act causing the premature death." *Yowell v. Piper Aircraft Corp.,* 703 S.W.2d 630, 633 (Tex. 1986). Thus, the plaintiff must offer proof as to the "decedents' salaries, expected raises, expected promotions and salary increases, earning capacities, enforced savings through pension plans, spending habits, age, health, and relationship with the wrongful death beneficiaries." *Id.* at 634.

Loss of Services A parent may recover for loss of services of an injured child. *Morrell v. Finke*, 184 S.W.3d 257, 290–91 (Tex. App.—Fort Worth 2005, pet. denied). "Services" includes the performance of household and domestic duties. *Whittlesey v. Miller*, 572 S.W.2d 665, 666 n.2 (Tex. 1978).

Noneconomic Damages Noneconomic damages include "physical pain and suffering, mental or emotional pain or anguish, loss of consortium, disfigurement, physical impairment, loss of companionship and society, inconvenience, loss of enjoyment of life, injury to reputation, and all other nonpecuniary losses of any kind other than exemplary damages." TEX. CIV. PRAC. & REM. CODE § 41.001(12). Plaintiffs have asserted various claims for pain and suffering, mental anguish, disfigurement, impairment, and loss of companionship or consortium. The process of awarding noneconomic damages "is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss." *Dawson v. Briggs*, 107 S.W.3d 739, 750 (Tex. App.—Fort Worth 2003, no pet.); *Dollison v. Hayes*, 79 S.W.3d 246, 249 (Tex. App.—Texarkana 2002, no pet.). The fact finder is granted significant discretion in determining noneconomic damages because, as discussed, there is no objective measure to determine the adequacy of such compensation. See *Dawson*, 107 S.W.3d at 751; *Dollison*, 79 S.W.3d at 249. However, its discretion is not unlimited. In FTCA cases, courts will often look to previous reported damage awards in the state to determine the claimant's recovery for noneconomic damages. See, e.g., *Lebron*, 279 F.3d at 325–29. Even so, "[b]ecause the facts of each case are different, prior damages awards are not always controlling . . . ." *Id.* at 326. Where unique facts are presented that are not reflected by controlling case law, a court may depart from prior damage awards. *Id.*

Mental Anguish In both personal injury and wrongful death cases, a plaintiff may seek recovery for past and future mental anguish. Texas PJC – General Negligence, Intentional Personal Torts & Workers' Compensation (2020), PJC 28.3, 29.3–29.6 & comments. Recovery for mental anguish is permitted in personal injury cases in which the defendant's conduct caused serious bodily injury. *City of Tyler v. Likes*, 962 S.W.2d 489, 496 (Tex. 1997). Mental anguish is also recoverable for injuries of such a "shocking and disturbing nature that mental anguish is a highly foreseeable result," including suits for wrongful death and actions by bystanders for a close family member's serious injury. *Id.* Where the plaintiff herself has been seriously injured, mental anguish may be inferred by the fact finder. *Popkowsi v. Gramza*, 671 S.W.2d 915, 919 (Tex, App.—Houston [1st Dist.] 1984, no writ); see also *City of Tyler*, 962 S.W.2d at 495.

However, the fact finder "cannot automatically infer mental anguish once any physical injury is sustained." *Katy Springs & Mfg., Inc. v. Favalora,* 476 S.W.3d 579, 595 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (emphasis in original). The fact finder, instead, should "consider the traumatic nature of the injury as a factor" in determining its award. *Id.* In cases where the plaintiff is seeking recovery for mental anguish as a bystander, a plaintiff is required to establish that:

(1) The plaintiff was located near the scene of the accident, as contrasted with one who was a distance away from it;

(2) The plaintiff suffered shock as a result of a direct emotional impact upon the plaintiff from a sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and

(3) The plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. *United Svcs. Auto. Ass'n v. Keith*, 970 S.W.2d 540, 542 (Tex. 1998).

Lastly, "[i]n wrongful death cases, mental anguish is the emotional pain, torment, and mental suffering that the plaintiff experienced as a result of the death of a family member." *Lane v. Martinez,* 494 S.W.3d 339, 345 (Tex. App.—Eastland 2015, no pet.).

Compensation for mental anguish can be awarded only for such anguish that causes "substantial disruption in daily routine" or a "high degree of mental pain and distress." *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995) (quoting *Trevenio v. Sw. Bell Tel. Co.*, 582 S.W.2d 582, 584 (Tex. Civ. App.—Corpus Christi 1979, no writ)). "Thus, proof of mental anguish can include painful emotions such as grief, severe disappointment, indignation, wounded pride, shame, despair, public humiliation, or a combination of any or all of those feelings." *Thomas v. Uzoka*, 290 S.W.3d 437, 455 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

"Mental anguish can be established through testimony from the injured party explaining how she felt and how her life was disrupted." *Tagle v. Galvan,* 155 S.W.3d 510, 519 (Tex. App.—San Antonio 2004, no pet.). Evidence of mental anguish may also be introduced through the testimony of third parties or experts. *Parkway Co.,* 901 S.W.2d at 444.

Pain and Suffering In a survival action, "only pain consciously suffered and experienced is compensable." *Ruiz v. Guerra*, 293 S.W.3d 706, 722 (Tex. App.—San Antonio 2009, no pet.). Conscious pain and suffering may be inferred from proof that the deceased had severe injuries or may be established by circumstantial evidence. *Id.* When the existence of pain and

suffering is established, "there is no objective way to measure the adequacy of the amount awarded as compensation, which is generally left to the discretion of the fact-finder." *Dawson*, 107 S.W.3d at 751. The amount of damages awarded for pain and suffering are "necessarily speculative and each case must be judged on its own facts." *Pentes Design Inc. v. Perez*, 840 S.W.2d 75, 80–81 (Tex. App.—Corpus Christi 1992, writ denied). 3. Physical Impairment "Physical impairment, sometimes called loss of enjoyment of life, encompasses the loss of the injured party's former lifestyle." *PNS Stores, Inc. v. Munguia*, 484 S.W.3d 503, 513 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

Loss of Consortium or Companionship Recovery for loss of consortium is derivative of an injured person's claim. *Motor Express, Inc. v. Rodriguez*, 925 S.W.2d 638, 640 (Tex. 1996). Loss of consortium refers to the plaintiff's loss of "love, affection, protection, emotional support, companionship, care, and society" as a result of the injury their loved one suffered. *Reagan v. Vaughn*, 804 S.W.2d 463, 466 (Tex. 1990). Generally, spouses and children may seek such recovery. See id. (injury to parent); *Whittlesey v. Miller*, 572 S.W.2d 665, 666 (Tex. 1978) (loss of spousal consortium).

Children may recover loss of consortium for the loss of "the parent's love, affection, protection, emotional support, services, companionship, care, and society" resulting from the injury to their parent. *Reagan*, 804 S.W.2d at 467. "Factors that the jury may consider in determining the amount of damages include, but are not limited to, the severity of the injury to the parent and its actual effect upon the parent-child relationship, the child's age, the nature of the child's relationship with the parent, the child's emotional and physical characteristics, and whether other consortium giving relationships are available to the child."

*Id.* In the wrongful-death context, loss of companionship and society "refers to the positive benefits flowing from the love, comfort, companionship, and society that the beneficiary would have experienced had the decedent lived." *Thomas*, 290 S.W.3d at 455. Some factors a fact finder may consider in determining damages for loss of companionship include: "(1) the relationship between the [deceased and the plaintiff]; (2) the living arrangements of the parties; (3) any extended absence of the deceased from the beneficiary; (4) the harmony of family relations; and (5) the couple's common interests and activities." *Id.* at 456. The losses and pain these families have experienced is immeasurable. Our civil justice system only allows us to rectify these kinds of losses through money damages. Valuing human life, pain, and suffering is a task that our justice system has imposed on judges and juries, and the methodology used by both has been varied.

In FTCA cases, the burden of determining liability and awarding damages is placed exclusively on the trial judge without the benefit of a jury's input.

The Court has found liability in this case.

This case is unprecedented in kind and scope, these awards can serve as guidance. *Wheat v. United States*, 630 F. Supp. 699, 700, 722 (W.D. Tex. 1986) (reported damages of $3,000,000.00 for pain and suffering of decedent in FTCA case, adjusted for inflation: $7,631,441.61); *Champommier v. United States, Nos.* CV11-10538-MWF (PJWx), CV11-3913, 2013 WL 4502069, at *28 (C.D. Cal. Aug. 21, 2013) (reported noneconomic damages of $2,000,000.00 to shooting victim's mother in FTCA case); *Pressey v. Patterson,* 898 F.2d 1018, 1024–26 (5th Cir. 1990) (affirming reported jury award of $6,700,000.00 in compensatory damages to shooting victim, adjusted for inflation: $14,662,271.51.).

*Claims*

UV and Justina Garcia asserted wrongful death claims for the loss of their loved one, Ulises Vallderas in the shooting. U.V. has asserted survival actions on behalf of Ulises Vallderas

*Expert Testimony*

Plaintiffs' experts opine that Justina and Ulises experience "profound sadness, painful memories of the trauma, and avoidance of reminders of this loss."

### *UV*

UV was 12 years old when his father was killed. His father was raising him as a single father since his parents divorced. He has full custody of his son. UV had a close relationship with his dad. His mother died a year before his father

$1,000,000 for U.V. 's mental anguish that, in reasonable probability, he will sustain in the future for the death of his father, Ulises Vallderas. $3,000,000 for U.V. 's loss of companionship and society sustained in the past by the death of his father, Ulises Valladeras. $1,000,000 for U.V. 's loss of companionship and society that, in reasonable probability, he will sustain in the future for the death of his father, Ulises Vallderas.

### *Justina Garcia*

Justina Garcia brings a claim for wrongful death for her son, Ulises Vallderas. Since the shooting, Justina has been depressed and frequently has trouble sleeping, eating, and thinking. *Id.* at ____. Her life before and after her son's death, she testified "____." Additionally, as discussed, Ulises would frequently help her. For these reasons, the Court awards Justina Garcia: $2,000,000 for Justina Garcia's mental anguish sustained in the past for the death of her son, Ulises Vallderas. $1,000,000 for Justina Garcia's mental anguish that,

in reasonable probability, she will sustain in the future for the death of her son. $2,000,000 for Justina Garcia's loss of companionship and society sustained in the past for the death of her son. $1,000,000 for Justina Garcia's loss of companionship and society that, in reasonable probability, she will sustain in the future for the death of her son.

### *Heirs of the Estate of Ulises Valladares claims.*

Ulises Valladares sustained a fatal gunshot wound. He was shot in his left arm and the bullet traveled to his chest piercing his lung and vertebrate. *Id.* It caused "extensive hemorrhaging." He screamed in agony then slowly died due to the loss of blood. Before he died he experienced physical pain from the gunshot wounds and experienced mental pain and suffering after feeling the shooting and anxiety from the chaotic environment before the shooting there were a flurry of flash bang grenades thrown outside onto the property and after a delay in providing him life saving medical care. For these reasons, the Court awards the heirs of Ulises Valadares: $5,000,000.00 for his pain and mental anguish.

## CONCLUSION

The Court ORDERS Plaintiffs to submit proposed final judgments in each individual case within ___ days of this order. The judgments should reflect the damage awards made in this order. With respect to economic damages, the Court has determined the appropriate present value discount rate to be equivalent to a thirty-year Daily Treasury Yield curve rate at the date of the signing of the final judgment[1]. The Government may file any objections to the proposed judgments within ___ days of their filing.

---

[1] https://home.treasury.gov/resource-center/data-chart-center/interest-rates/TextView?type=daily_treasury_yield_curve&field_tdr_date_value_month=202410

<u>KENNETH M. HOYT</u>

DISTRICT COURT JUDGE