IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BROOKE PEARCE, as next friend of U.V., a minor, and JUSTINA GARCIA,<br>*Plaintiff,*<br><br>VS.<br><br>FBI AGENT, in his individual capacity,, NICHOLAS CHASE CUNNINGHAM; SOPHIA PEREZ HEATH; JIMMY TONY SANCHEZ; DELIA DUALDINA VELASQUEZ<br>*Defendants.* | Case. No. 4:18-cv-3196<br><br>JURY TRIAL |

## **PLAINTIFFS' MOTION TO DISSOLVE PROTECTIVE ORDER RELATING TO THE IDENTITY OF AGENT DOE**

TO THE HONORABLE KENNETH M. HOYT:

Plaintiffs file this motion to dissolve the protective order in this case as it relates to the public records in this case and as to naming the FBI shooter.

THE COURT ORDERED PLAINTIFFS TO NAME THE SHOOTER IN OPEN COURT OCTOBER 17, 2024 AT PUBLIC TRIAL AND THEY DID SO WITH SEVERAL MEMBERS OF THE PUBLIC AND THE PRESS IN ATTENDANCE. While perhaps now a technicality Plaintiffs request an order dissolving the protective order including being able to speak and communicate the name of the FBI shooter.

# I. PROCEDURAL HISTORY

On June 22, 2020, this suit was filed against the United States and Agent John Doe. The parties agreed to enter into a standard protective order based on the nature of some documents being privileged and not being made public. Dkt. 14. The agreement was also based on the potential prejudice that Agent Doe could face with the pending criminal charges looming. On \_\_\_\_, the court issued the Order on Motion for Protective Order.[Dkt. 15].

It was entered into to preserve the secrecy associated with the grand jury and other criminal processes. The criminal process has concluded, the Harris County grand jury no-billed Agent Doe. There's no longer any pending criminal charges against any parties. Agent Doe's name is public through many other sources. Additionally, the agreed protective order was never intended to include information that is identified as confidential, but becomes public in the future, or is currently public information from other sources, such as the Houston Police department, from other courts, or district attorney's offices who are not bound by protective order from displaying the documents and recordings. The other terms and conditions of Agreed Protective Order were to remain in full force and effect and survive the final resolution of this dispute unless the Court amends, supersedes, or withdraws the Agreed Protective Order. The agreed protective order as to Agent Doe's identity is now moot and the court should withdraw the order protecting any police reports, and video footage providing Agent Doe's identity. Ex. A.

# II. STANDARD OF REVIEW

The United States Supreme Court reviewed a lower court's decision to grant, lift, or modify a protective order for abuse of discretion. See *Anderson v. Calderon*, 232 F. 3d, 1053, 1099(9th Cir. 2000).; *Empire Blue Cross & Blue Shield v. Janet Greeson's A Place for Us. Inc.*, 62 F. 3d 1217, 1219 (9th Cr. 10995). The court reviewed de novo, however, whether the lower court used the correct legal standard in determining whether it should have granted a protective order. See *Kulass v. Flores*. 255 F. 3d 780, 783 (9th Cr. 2001)

Generally, the public can gain access to litigation documents and information produced during discovery unless the party opposing disclosure shows "good cause" why a protective order is necessary. *In San Jose Mercury News, Inc. v. United States Dist. C*t. 187 F. 3d 1096, 1103 (9t Cir. 1999), the court said "[i]t is well established that the fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public. Rule 26(c) authorizes a district court to override this presumption where 'good cause' is shown" See also *In re Agent Orange Product Liability Litig.*, 821 F 2d 139, 145 (2d Cir. 1987) ("[i]f good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public") Rule 26 ( c) states, in relevant part:

The court may, for good cause, issue an order to protect a party or person for annoyance, embarrassment, oppression, or undue burden or expense.

For good cause to exist, the party seeking protection bears the burden of showing **specific** prejudice or harm will result if no protective order is granted. See *Beckman Inds, Inc. v. International Ins. Co.* 966 F. 2d 470, 476 (9th Cir. 1992) (holding that "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26 (c) test":; See also *San Jose Mercury News, Inc.* 187 F. 3d at 1102(holding that to gain a

protective order the party must make "particularized showing of good cause with respect to any individual document") If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interest to decide whether a protective order is necessary. See *Glenmede Trust co. v. Thompson,* 56 F. 3d 476.483(3rd Cir. 1995).

### III. ARGUMENT AND AUTHORITIES

Applying a "good cause" analysis on our facts requires the court in the exercise of its discretion to lift the protective order. The party seeking protection bears the burden of showing specific prejudice or harm will ensue, as a result of no protective order being granted. Here, now that there's no longer any pending criminal charges against any defendants particularly Agent Doe, who cannot just assert "broad allegations of harm, or unsubstantiated by specific examples or articulated reasoning will not satisfy the Rule 26(c) test. The parties must "particularize its showing of good cause with respect to any individual document (video or settlement documents). The parties can no longer meet the burden of establishing particularized harm when the public needs to see and know the facts to support the claims and defenses and to prevent future occurrences by learning from the mistakes. Even if assuming this particularized harm is shown by Agent Doe, the plaintiff believes it cannot; the court then must balance the public and private interests to decide whether a protective order is necessary. See *Glenmede* at 476, 483, supra.

***Common Law Right of Access***

In balancing the public and private interests to decide whether the public needs to know this information. If the court finds good cause exists to protect [Agent Doe's name],

then it must determine whether the parties have a right under the *common law right of access*, a separate and independent basis for obtaining this information. *Phillips v. General Motors Corp*, 307 F. 3d 1206,1210 (9th Cir. 20002)  Not only can the public generally gain access to unprotected information produced during discovery, but it has a federal common law right of access to all information filed with the court. This common law right of access to inspect various judicial documents is well settled in the law of the Supreme Court and this circuit. See *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed. 2d 570 (1978). This common law right "creates a strong presumption in favor of access" to judicial documents which "can be overcome" only by showing "sufficiently important countervailing interests" *Hagstad v. Tragesser*, 49 F. 3d at 1434 (9th Cir. 1995). In deciding whether sufficient countervailing interests exist, the courts will look to the "public interest in understanding the judicial process and whether disclosure of the material could result in an improper use of the material for scandalous or libelous purposes or infringement, upon trade secrets" *Hagstad v. Tragesser*, 49 F. 3d at 1434 (9th Cir. 1995).

The issue here is whether the strong presumption of access applies to the identity of the tortfeasor, which currently requires filings under seal subject to an agreed protective order. The answer is yes. The federal common law right to access strong presumption of access applies to the identity of those who have caused harm. Not only can the public generally gain access to unprotected information produced during discovery, but it has a federal common law right of access to all information filed with the court except materials properly submitted to the court under seal*.: Lawmaster v. United States*, 993 F. 2d 773,775 (10th Cir. 1993).

There remains a compelling reason why discovery information should not be sealed. Those reasons include prevention of similar actions, education, training of other officers, and allowing the public and other practitioners to bring similar claims to understand the true nature of allegations here and optional completeness to the video which is currently released and has always been made public.

The Supreme Court in *Phillips* reasoned that when a court grants a protective order for information produced during discovery, it already has determined that "good cause" exists to protect this information from being disclosed to the public by balancing the need for discovery against the need for confidentiality. Applying a strong presumption of access to documents a court has already decided should be shielded from the public would surely undermine, and possibly eviscerate, the broad power of the district court to fashion protective orders. Although we understand the public policy reasons behind a presumption of access to judicial documents (judicial accountability, education about the judicial process, etc.), it makes little sense to render the district court's protective order useless simply because the plaintiffs attached a sealed discovery document to a non-dispositive sanctions motion filed with the court. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 104 S. Ct. 2199, 81 L.Ed. 2d 17 ( 1983).

But once the sealed discovery documents are made part of a dispositive motion [summary judgment motion or motion to dismiss ruled upon by the court] … they lose their status of being raw fruits of discovery" *Rushford v. New Yorker Magazine, Inc.* 846 F. 2d 249, 252 ( 4th Cir. 1988) As such, they are unprotected.

In *Binh Hoa Le*, the Fifth Circuit expounded upon the history and importance of public access to judicial records that trace a noble lineage "back to Roman law." *Id.* at *6. The Fifth Circuit further explained that there are two distinct standards. "The first standard, requiring only "good cause," applies to protective orders sealing documents produced in discovery." *Id.* "The second standard, a stricter balancing test, applies once a document is filed on the public record — when a document becomes a judicial record. Under both standards, the working presumption is that judicial records should not be sealed." *Id.* (internal marks omitted). "[j]udicial records are public records. **And public records, by definition, presume public access**." *Binh Hoa Le v. Exeter Fin. Corp.,* No. 20-10377, ––– F.3d ––––, 2021 WL 838266, *4 (5th Cir. March 5, 2021). There exists a common-law right allowing the public to inspect and copy judicial records. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978); *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir.1993). This common-law right generally creates a strong presumption in favor of public access to court proceedings and records. *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983), cert. denied, 465 U.S. 1100 (1984).

While this access to judicial records is not absolute, a district court's discretion to seal the record of a proceeding "is to be exercised charity." *Van Waeyenberghe,* 990 F.2d at 848 (quoting *Federal Sav. & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir.1987)).

This is because public access to judicial records "serves to promote trustworthiness of the [*5] judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness."

*Id.* at 849 (quoting *Littlejohn v. Bic Corp.,* 851 F.2d 673, 678 (3d Cir.1988)). See also *United States v. Raybould,* 130 F.Supp.2d 829, 832 (N.D. Tex. 2000) ("Openness in judicial proceedings 'gives assurance that established procedures are being followed and that deviations will become known,' enhancing 'both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.'" (citing Press-*Enterprise Co. v. Superior Court of Cal.,* 464 U.S. 501, 508 (1984))). The party seeking to overcome the presumption of public access to all judicial records and documents bears the burden of showing some significant interest that outweighs this presumption. *Virginia Dept. of State Police v. Washington Post,* 386 F.3d 567, 575 (4th Cir. 2004) (citation omitted). See also *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) ("This Court has made it clear that our 'strong presumption' of openness does not permit the routine closing of judicial records to the public. The party seeking to seal any part of a judicial record bears the heavy burden of showing that 'the material is the kind of information that courts will protect' and that 'disclosure will work a clearly defined and serious injury to the party seeking closure.'" (citing *Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059, 1071 (3d Cir. 1984))).

As one court noted, [a] party cannot satisfy its burden with '[b]road allegations of harm, bereft of specific examples or articulated reasoning.' *In re Cendant Corp.,* 260 F.3d 183, 194 (3d Cir.2001) (citation omitted). Instead, it must show with "specificity" that the portion of the record it seeks to keep from the public contains the type of information courts protect and that its 'disclosure will work a clearly defined and serious injury to [it].' *Id.* (quoting [*Miller v. v. Indiana Hosp.*, 16 F.3d at 551]) The Fifth Circuit explicitly cautioned district courts against the practice of routinely adopting abusive protective orders that violate

the common law presumption of public access to judicial records. See *Binh Hoa Le v. Exeter Fin. Corp.*, No. 20-10377, 2021 U.S. App. LEXIS 6663(5th Cir. Mar. 5, 2021). The Circuit reiterated that "excessive secrecy—particularly displacing the high bar for sealing orders with the low bar for protective orders—undercuts the public's right of access and thus undermines the public's faith in our justice system. Legal arguments, and the documents underlying them, belong in the public domain." *Id.* at *17. ("The presumption of openness is Law 101: 'The public's right of access to judicial records is a fundamental element of the rule of law.').

There is a vital public interest in open judicial proceedings. The Government has a general overriding affirmative duty to oppose their closure—moreover, a strong presumption against closing proceedings or portions thereof. The City of Baytown, as a Government, should take a position against closing a judicial proceeding in furtherance of the right of the public to attend judicial proceedings and the Department's obligation to the fair administration of justice. Defendants must show with specificity that the documents and any testimony they are seeking to "keep from the public contains the type of information courts protect" and that their "disclosure will work a clearly defined and serious injury to the plaintiff."

There is no "investigatory information" in this case. The criminal cases involved here are all completed. The government or its actors have no private interest in litigation under 42 USC 1983 cases. The proposed protective order places an unnecessary requirement on the parties to sign a separate confidentiality agreement before viewing the Defendant's

designated documents. The plaintiff and its counsel should not be burdened with the lifelong task of assuring that information by the government be concealed from public view on an order by this court the defendants are seeking, and there is no good cause for doing so. Further, there is no longer a compelling reason for the order to remain in place. A compelling reason is defined as an interest "essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. Co.*, 478 U.S. at 2. Generally, compelling reasons require a finding that "the disclosure of the material could result in improper use of material for scandalous or libelous purpose or infringement upon trade secrets." *Foltz*, 331 F.3d at 1136. The defendants provided no facts in their motion to support a notion of good cause or a narrowly tailored compelling interest.

To allow the protective order to remain in effect contradicts the principle of government transparency, and it hinders the public's right to open courts. This includes citizens, police officers, public officials, and others who have a vested interest in government transparency, both now and in the future. Furthermore, a protective order places an undue burden on the Plaintiffs' capacity to effectively litigate this case and seek further counsel.

There is a presumption of openness of court proceedings. Without specific proof of how the documents are actually "private," it is unreasonable to significantly hinder the Plaintiffs in this case and in the future ability to litigate cases against Baytown or its officers. Further, there is no showing how any actual "harm" *will* befall them from disclosure. Any sensitive information, such as an officer's identification number, may be protected through

redaction. There are no grounds that outweigh the public's common law right to access records in this judicial proceeding. See *Van Waeyenberghe*, 990 F.2d at 848.

## CONCLUSION

For the reasons stated above, the plaintiff respectfully requests that the court grant the motion to set aside and lift the protective order on the produced public records. This will allow the information to be published freely including in the upcoming mediation scheduled for September 25, 2024, in court records in response to dispositive and other motions without the burden of a support a frivolous motion to seal, in line with the presumptive right of access. Should the court find that fully setting aside the protective order is not appropriate, the plaintiff alternatively requests that the court provide detailed guidance on which specific items should remain protected and which should be released.

Respectfully Submitted
/s/ U.A. Lewis
U.A. Lewis
SBN: 24076511
FBN: 1645666
The Lewis Law Group
P.O. Box 27353
Houston, TX 77227
Phone: (713) 570-6555
Fax: (713) 581-1017
MyAttorneyAtLaw@gmail.com
Attorney for the Plaintiff

### CERTIFICATE OF CONFERENCE

Plaintiff's counsel has conferred with defense counsel, Wiley on October 21, 2024 via email, but neither have indicated whether she was unopposed to the Motion.
/s/ U.A. Lewis
U.A. Lewis

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to each counsel of record through ECF on the date of this filing.

/s/ U.A. Lewis

U.A. Lewis

/s/    Randall L. Kallinen

Randall L. Kallinen